Dear Ms. Truly:
You requested the opinion of this office regarding whether certain actions may be taken to affect the Louisiana Public Facilities Authority Special Assessment Revenue Bonds (Unemployment Compensation Funding Program), Series 1987 (the "Series 1987 Bonds"). The Series 1987 Bonds were issued pursuant to Act No. 1 of the First Extraordinary Session of 1987, being R.S. 23:1532.1, for the purpose of financing the payment of the outstanding principal amount advanced to the state from the federal account of the Unemployment Trust Fund. The Bonds are secured by a special assessment on employers, which assessment is only assessed by the Department if the Bonds are deemed to be outstanding.
Your questions are whether a legislative act, which is contrary to the provisions of the Bond Indenture and the Reimbursement Agreement, is legal and/or constitutional? And secondly, do the provisions of R.S. 23:1532.1(B)(1)(b) permit a reduction of the special assessment, in either tax rate or wage base, in payment of the outstanding bonds?
The Contracts Clause of the United States Constitution, Art. I, Sec. 10[1], and of the Louisiana Constitution, Art. I., Sec. 23, prohibit the enactment of a law impairing the obligation of contracts.
In Board of Commissioners of the Orleans Levee District v. Department of Natural Resources, 496 So.2d 281 (La. 1986), our Supreme Court relied on the United States Supreme Court decision in Energy Reserves Group, Inc. v. Kansas Power Light, 459 U.S. 400,103 S.Ct. 697, 74 L.Ed.2d 569 (1983) to set forth the "appropriate Contract Clause standard". While the language of the Contract Clause is facially absolute "its prohibition must be accommodated to the inherent police power of the State to safeguard the vital interests of its people".
The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual obligation. If an impairment is found, the next determination is whether the impairment is of a constitutional dimension. Total destruction of contractual expectations is not necessary for a finding of substantial impairment. However, a state regulation that restricts a party to the gains it reasonably expected from the contract does not necessarily constitute a substantive impairment.
If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation. The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests.
Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. In making the analysis, a central concern to the courts has been to protect legitimate contract-based expectations from government interference. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts. Into all contracts there enters the condition that the state may not bargain away or otherwise be prevented from exercising its police power, viz., the exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people. Consequently, when legislation modifies or abrogates contracts already in effect, the crucial question is whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end.
Assuming that the legislative act being questioned by you is an attempt to reduce or eliminate the special assessment being levied, it is the opinion of this office that such an act would violate the Commerce Clauses of the United States and Louisiana Constitutions.
Following are selected excerpts from the Trust Indenture executed between the LPFA and the Trustee in connection with the Bonds:
 Section 1.04. Pledge. The Series 1987 Bonds shall be limited and special revenue obligations of the Issuer specifically and solely payable from and secured by a pledge of the Trust Estate . . . the Administrator of the Department is obligated to administer and cause to be collected the Special Assessment in such amounts as will be sufficient to pay Annual Debt Service on the Series 1987 Bonds plus certain costs associated with the Series 1987 Bonds, including the Reimbursement Obligations. (Emphasis added)
 The Issuer covenants and agrees with the registered owners of the Series 1987 Bonds that the Issuer will not limit or alter voluntarily its powers to fulfill the terms of any agreements made in this Indenture, the Loan Agreement or in the Series 9187 Bonds or in any way impair the rights and remedies of the Bondholders so long as the Series 1987 Bonds are Outstanding and until all Reimbursement Obligations are fully met and discharged. (Emphasis added)
 Section 2.03. Execution; Limited and Special Obligation. . . . PURSUANT TO THE LOUISIANA EMPLOYMENT SECURITY LAW AND THE AGREEMENT, THE ADMINISTRATOR OF THE DEPARTMENT IS OBLIGATED TO ADMINISTER AND CAUSE TO BE COLLECTED THE SPECIAL ASSESSMENT IN SUCH AMOUNTS AS WILL BE SUFFICIENT TO PAY ANNUAL DEBT SERVICE ON THE SERIES 1987 BONDS PLUS CERTAIN COSTS ASSOCIATED WITH THE SERIES 1987 BONDS, INCLUDING THE REIMBURSEMENT OBLIGATIONS . . . (Emphasis added)
Definitions are found in Section 1.01 of the Trust Indenture and include:
 "Pledged Revenues" means (a) proceeds of the Special Assessment produced by the levy at the rate fixed each year pursuant to Section 1532.1 of the Louisiana Employment Security Law . . .
 "Special Assessment" means the temporary employer special assessment authorized by Section 1532.1(B) of the Louisiana Employment Security Law.
The Loan Agreement between the Department of Employment Security (now the Department of Labor and the LPFA) provides in pertinent part as follows:
 The Department shall levy the Special Assessment pursuant to the provisions of the Louisiana Employment Security Law, including, in particular, but not by way of limitation, Section 1532.1 thereof. The Department shall take all actions necessary and appropriate to levy and collect the Special Assessment . . . The Department acknowledges that the Special Assessment is the sole source of security for the Series 1987 Bonds. (Emphasis added)
The Reimbursement Agreement between the Letter of Credit Banks, the LPFA and the Department provides in pertinent part:
 Section 5.3. Affirmative Covenants of the Department. Until this Agreement and the Letter of Credit terminate and all obligations of the Department to the Banks under or in respect of this Agreement, the Loan Agreement, the Indenture and the Letter of Credit are paid in full, the Department shall do the following:
 (c) Compliance with Laws; Collection of Special Assessment; Application of Proceeds. The Department will maintain in full force and effect all material rights and statutes (including the Employment Act), and comply in all respects with applicable laws, including the Employment Act. . . Such compliance shall include but shall not be limited to the levy and collection of the Special Assessment . . .
 Section 5.4. Negative Covenants of the Department. Until this Agreement and the Letter of Credit terminate and all obligations of the Department to the Banks . . . are paid in full, the Department shall not, without the prior written consent of the Banks, do, agree to do, or permit to be done, any of the following:
 (d) Amendments to Employment Act. Suffer the repeal, amendment, supplementation or any other change in the Employment Act that in any way materially adversely affects or impairs (i) the timing, source, method or amount of the Special Assessment levied or collected . . . (iii) any rights of the Banks under the Bond Documents. (Emphasis added)
In summary, these documents require that the Special Assessment be collected in an amount sufficient to pay the annual debt service on the Series 1987 Bonds and prohibit the Issuer or the Department from taking any action which would materially adversely affect the security for the Series 1987 Bonds. There can be no question that to reduce or cancel the special assessment while the Series 1987 Bonds are outstanding, would be an impairment of the Bonds. See Dantoni v. Board of Levee Commissioners of the Orleans Levee District, 227 La. 575, 80 So.2d 81 (1955); Royal Liquor Mart, Inc. v. City of Rockford,479 N.E.2d 485 (Ill. C.A., 1985); Davies v. City of Minneapolis,316 N.W.2d 498 (Minn.S.Ct., 1982).
Furthermore, since the only security for the Bonds is the special assessment, such an attempt would be a substantial impairment of the Bonds. While the undersigned is aware that the Governor has announced a plan to defease the Series 1987 Bonds, until the bonds are formally defeased, they are considered outstanding. See R.S. 39:1442.
Finding that there would be a substantial impairment of the Bonds in the event that the special assessment is reduced or canceled, in order for the impairment to be found constitutional the State must have a legitimate public purpose behind the regulation. While this office agrees that reducing the tax burden on Louisiana employers is a laudable objective, that goal does not appear to fulfill the requirement that any such change would be in the exercise of the State's police power, i.e., such a change would not be for the purpose of protecting the lives, healths, morals, comfort and general welfare of the people.
Your second question is whether R.S. 23:1532.1(B)(1)(b) permits a reduction of the special assessment, in either tax rate or wage base, in payment of the outstanding bonds. R.S.23:1532.1(B)(1)(b) states in pertinent part:
 Employers shall not be assessed a special assessment unless bonds as defined in this Subsection are issued and shall not be assessed (except for such period on and after July 1, 1987, to and including the date said bonds are issued) a special assessment at such time bonds are no longer deemed to be outstanding. Notwithstanding the foregoing, there shall be assessed a special assessment equal to one and four-tenths percent on such dollar amount of the first wages paid by such employer to each employee as will produce no less than an amount necessary to pay the maximum future annual debt service on any outstanding bonds, notes, certificates, reimbursement obligations . . ." (Emphasis added)
This provision does not allow the special assessment to be eliminated while the bonds remain outstanding, which as stated earlier, may occur upon a formal defeasance. Nor does this statute allow for the reduction of the rate of the special assessment — the statute plainly says it must be in the amount of one and four-tenths percent.
The rate is also set forth in Section 1532.1(B)(1)(a), which also sets forth the base, providing in pertinent part as follows:
 On and after July 1, 1987, and through and including those calendar quarters in which any outstanding bonds . . . are outstanding, employers shall be assessed by the administrator and shall pay a special assessment . . . equal to one and four-tenths percent of the first fifteen thousand dollars of wages paid by such employer or his predecessor to each employee, except for that period beginning July 1, 1987, and ending December 31, 1987, during which the special assessment shall equal one and four-tenths percent of the first seven thousand five hundred dollars of wages paid on and after July 1, 1987, by such employer to each employee.
This statute sets forth the rate and the base amount, and there is no authority for the administrator to change the base or reduce the rate of the special assessment. While 1532.1(B)(1)(b) may allow the legislature to increase the base in order to ensure that the debt service is paid, there is certainly no authority to decrease the base below the original amount set forth in the statute. Hypothetically, if the legislature had increased the base, it may be possible for the legislature to now decrease the base but not below the original assessment. That decrease could not be in an amount less than the assessment originally pledged as security for the Bonds.
It should also be noted that in the event the Department were to cancel the assessment while the Bonds remain outstanding, there would be a technical default of the Bonds even if there were sufficient revenues to pay the debt service on the Bonds. A technical default of this magnitude has the potential to affect the State's credit rating and thus impact the interest rates on future bond issues of the State.
Trusting this adequately responds to your request, I remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: MARTHA S. HESS Assistant Attorney General
RPI/MSH/jav 2929m